UNITED STATES of America, Appellee,

v.

James A. GANTZER,
Defendant-Appellant.

No. 291, Docket 86–1264.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1986.

Decided Jan. 26, 1987.

See also, D.C., 633 F.Supp. 174.

Jon Louis Wilson, Jackson and Wilson, Lockport, N.Y., submitted a brief for defendant-appellant.

Roger P. Williams, U.S. Atty., Martin J. Littlefield, Asst. U.S. Atty., Buffalo, N.Y., submitted a brief for appellee.

Before KAUFMAN, NEWMAN, and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

■ This appeal presents the issue whether the constitutional right recognized in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), to view obscene materials in the privacy of one's own home insulates a defendant from conviction for mailing obscene materials for private use. The issue is raised by James Gantzer on this appeal from a judgment of the District Court for the Western District of New York (John T. Curtin, Chief Judge), convicting him, after a three-day jury trial, of sending obscene materials through the mail, in violation of 18 U.S.C. § 1461 (1982). Gantzer first challenges certain evidentiary rulings and then challenges the constitutionality of the statute as applied to him, arguing that his private correspondence, pursued without motive of economic gain, is constitutionally protected under this Court's decision in *United States v. Dellapia*, 433 F.2d 1252 (2d Cir.1970). We conclude that Supreme Court rulings since *Dellapia* have eroded the force of that decision and made it clear that *Stanley* does not protect mailings of obscene materials for private use. We therefore affirm.

## Background

The evidence at trial disclosed that James Gantzer sent Raymond Smith, an undercover postal inspector, ten obscene photographs through the mail. Gantzer had been identified as a target for investigation by the United States Postal Inspection Service (Service) after the Service learned through Interpol that a 1982 search of a known pornographer in Denmark uncovered letters from Gantzer requesting catalogs of pornographic materials. In late January 1984, Smith, using an assumed name, wrote a letter to Gantzer in which he obliquely described an interest in collecting and exchanging child pornography and invited Gantzer to "exchange ideas, experiences, and other subjects and topics of interest." Gantzer promptly responded with an expression of interest, and a brief correspondence ensued.

In his second letter to Smith, postmarked February 21, 1984, Gantzer enclosed the photographs that formed the basis of the indictment. Eight of the photographs displayed nude girls less than sixteen years old striking various poses intended to be sexually provocative. The photos were admitted into evidence over Gantzer's objection and despite his offer to stipulate that they were obscene.

The Government relied on the mailing of these photos to establish the offense charged, making no claim that the photos were intended for other than personal use. Gantzer presented a defense of entrapment. The Government countered with evidence of predisposition, including letters written by Gantzer that were seized during the search in Denmark and correspondence about pornography addressed to Gantzer that was found in open envelopes during a search of Gantzer's home incident to his arrest. The jury convicted, and Gantzer was placed on probation for three years.

## Discussion

### I. The Evidentiary Rulings

Gantzer first contends that the District Court erred in admitting the photographs, claiming his concession of their obscenity negated their only probative value. In light of this proffered stipulation, he ar-

gues, the photographs' prejudicial effect clearly outweighed any probative value, and they should have been excluded under Fed.R.Evid. 403.

■■■ This claim is without merit. We have long recognized that the decision whether to admit potentially prejudicial evidence is entrusted to the sound discretion of the district judge and will not be disturbed absent an abuse of discretion. *See United States v. Bari,* 750 F.2d 1169, 1178 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985); *United States v. Robinson,* 560 F.2d 507, 514 (2d Cir.1977) (in banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). Chief Judge Curtin acted well within his discretion in admitting the photographs for which Gantzer was indicted, Gantzer's concession of obscenity notwithstanding. A party is not obliged to accept an adversary's "judicial admission" in lieu of proving the fact, *United States v. Mishkin,* 317 F.2d 634, 638 (2d Cir.) (concession of obscenity), *cert. denied,* 375 U.S. 827, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963), particularly in the context of a criminal prosecution where the accused seeks to stipulate to an element of the crime charged, *see, e.g., United States v. Campisi,* 306 F.2d 308, 312 (2d Cir.), *cert. denied,* 371 U.S. 925, 83 S.Ct. 293, 9 L.Ed.2d 233 (1962).

· *United States v. Borello,* 766 F.2d 46 (2d Cir.1985), cited by appellant, compels no different result. Borello illegally imported obscene films into the United States, evading customs screening by representing that the films were popular adventures. He was indicted for misrepresentation and smuggling merchandise that should have been invoiced. Despite Borello's stipulation that 771 of the 810 films were sexually explicit, the trial judge admitted a brochure and a list of the films' provocative titles. We found the admission an abuse of discretion, holding that the evidence had virtually no probative value and substantial prejudicial effect. Crucial to our ruling in *Borello* was the fact that no obscenity charges were lodged against the accused. The obscenity of the films Borello imported

was tangential to the charges he faced. By contrast, the obscenity of the photographs Gantzer mailed was a critical element of the crime charged. The Government was entitled to present those photographs to the jury, and Chief Judge Curtin clearly had discretion to admit them.

Gantzer next contends that Chief Judge Curtin erroneously admitted the evidence the Government offered to show predisposition, again claiming the probative value of the evidence was outweighed by prejudicial effect. The challenged evidence consisted of letters from Gantzer requesting catalogs of pornographic materials, letters to Gantzer discussing the availability of pornography, and a catalog advertising pornographic films. Gantzer asserts that (a) the correspondence seized during the search of his home was improperly admitted because the Government failed to lay an adequate foundation linking the open envelopes to the letters they contained, and (b) the evidence was not probative of Gantzer's predisposition to mail obscene items but only of his arguably poor taste.

■■ Gantzer's challenge to foundation is wholly without merit. The documents were seized from Gantzer's home, where they were found inside postmarked envelopes addressed to him. Two letters, which both begin "Dear Jim," are signed by Gary Johnson, whose name and address appear on the envelopes as the sender. A third, also beginning "Dear Jim," is adequately linked to the envelope containing it by its date, which precedes the postmark date by only four days. The last two letters, both signed "Pussycake," begin "Hello Stud" and "Dear Stud." The first, apparently a form letter advertising a potpourri of erotica, including bestiality photographs, ends with a mailing address that matches that on the envelope containing the second "Pussycake" letter. The last challenged document is a multi-lingual catalog of pornographic films found in an envelope bearing a Danish stamp and postmark. The catalog advertises the distributor's mailing address in Denmark. In light of the unique characteristics of each of

these documents linking them to the mailed envelopes in which they were discovered, there was more than sufficient foundation to introduce them into evidence.

■■■ Gantzer's challenge of the documents' relevance to predisposition is equally unavailing. The predisposition requirement is aimed at showing "that the accused was ready and willing to commit the offence charged" and that "the prosecution has not seduced an innocent person, but has only provided the means for the accused to realize his preexisting purpose." *United States v. Sherman*, 200 F.2d 880, 882 (2d Cir.1952). Propensity can be established in many ways, including proof of (1) an existing course of criminal conduct, (2) an already formed design by the accused to commit the crime, and (3) a willingness to commit the crime shown by ready response to inducement. *United States v. Mayo*, 705 F.2d 62, 68 (2d Cir.1983); *United States v. Viviano*, 437 F.2d 295, 299 (2d Cir.), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971).

■■■ Though the evidence at issue does not fall precisely within any of the enumerated categories, it satisfies the purpose underlying the burden to show predisposition. The evidence disclosed that as early as 1982 Gantzer wrote to the pornography dealer in Denmark requesting film catalogs; in 1983 he received a Danish catalog through the mail. The letters addressed to Gantzer, aimed primarily at exchange or sale of homemade "young stuff" and animal pornography, contained passages responsive to implied earlier letters from him, demonstrating that the correspondence between Gantzer and the writers had been ongoing prior to the mailings for which Gantzer was indicted. This evidence suggested that Gantzer actively pursued his interest in obtaining child pornography prior to February 1984 and that he used the mail in furtherance of that purpose. The evidence permits the inference that, far from being seduced by the Government, Gantzer's general purpose of obtaining and exchanging pornography, particularly child pornography, was formed prior to Inspector Smith's invitation. Under *United States v. Sherman, supra*, the documents were clearly appropriate to rebut entrapment.

Gantzer contends that to introduce these materials to rebut the entrapment defense the Government had to prove that their mailing rendered him guilty of crimes similar to those charged in the indictment. He argues that the Government was obliged to prove that the previously mailed documents were legally obscene.

■■■ Gantzer's argument rests on an incorrectly rigid interpretation of predisposition. Under Gantzer's theory, the Government could introduce evidence of a previous course of similar conduct only if it could prove that the prior conduct included legally punishable criminal acts. This approach would not only burden the Government intolerably by requiring proof of the requisite criminal elements of each act introduced to show predisposition, it would also unfairly prejudice the defendant by diverting the focus of the trial to a series of mini-trials for crimes not charged in the indictment. Such an approach is particularly inappropriate where the charged offense concerns obscenity—an area of law so murky and fraught with difficulty that scholars and courts have struggled for decades to distinguish between permissible pornography and unlawful obscenity. We hold that Gantzer's propensity to receive pornographic—though not necessarily legally obscene—materials through the mail is probative of his predisposition to send legally obscene photographs.

## II. The Constitutional Claim

Gantzer argues that 18 U.S.C. § 1461 is unconstitutional as applied to him because under *United States v. Dellapia, supra*, absent a commercial purpose, mailing of obscene materials is constitutionally protected. *Dellapia* arose in 1970, one year after the Supreme Court had ruled in *Stanley v. Georgia, supra*, that an individual's private possession and perusal of obscene materials was constitutionally protected. *Dellapia* presented the issue whether

*Stanley* compelled a ruling that the Constitution also protected the private, non-commercial distribution of obscene materials among consenting adults. We concluded that "[i]t would be anomalous to prevent consenting adults from freely passing among themselves obscene material which *Stanley* tells us each of them was entitled to possess and view or read." *United States v. Dellapia, supra,* 433 F.2d at 1258 (citation omitted). We consequently read section 1461 narrowly to accommodate the competing privacy interest recognized in *Stanley.*

Since our decision in *Dellapia,* however, the Supreme Court has expressly circumscribed the protection afforded by *Stanley* to exclude mailing of obscene material. In *United States v. Reidel,* 402 U.S. 351, 356, 91 S.Ct. 1410, 1412–13, 28 L.Ed.2d 813 (1971), the Court stressed that *Stanley* was directed at protecting freedom of mind and thought within the privacy of one's home and did not support a "claimed First Amendment right to do business in obscenity and use the mails in the process." *Id.* The Court rejected Reidel's argument that his conviction under section 1461 for mailing obscene books, apparently for profit, was unconstitutional under *Stanley; Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), not *Stanley,* controlled and dictated that such mailings were prohibited.

The Court subsequently made clear that *Stanley* did not protect mailings of obscene material for non-commercial use. In *United States v. 12 200–Ft. Reels of Super 8MM. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the majority wrote: "We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell *or give it* to others." *Id.* at 128, 93 S.Ct. at 2669 (citations omitted) (emphasis added).

We have previously noted the Supreme Court's broad reading of section 1461, *United States v. Petrov,* 747 F.2d 824, 826 (2d Cir.1984), *cert. denied,* 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 813 (1985), and questioned the continuing validity of *Dellapia, id.* at 835 (Newman, J., dissenting on other grounds). *See also United States v. Kiffer,* 477 F.2d 349, 352 (2d Cir.), *cert. denied,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973). We now hold that, in light of *Reidel* and *12 200–Ft. Reels of Super 8MM. Film, Dellapia* should be overruled.[1]

### Conclusion

For the foregoing reasons, the judgment of conviction is affirmed.

[1.] In accordance with our prior practice when a precedent of this Circuit is overruled in light of intervening Supreme Court decisions, this opinion has been circulated to the active members of the Court, none of whom has requested in banc consideration. *See Boothe v. Hammock,* 605 F.2d 661, 665 n. 5 (2d Cir.1979).