**UNITED STATES of America, Plaintiff,**

**v.**

**Allen Arthur PORTER, Defendant.**

**No. 88–CR–80554–DT.**

United States District Court,
E.D. Michigan, S.D.

March 7, 1989.

[redacted]

Richard Delonis, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Vincent P. Schumacher, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This is a criminal action wherein defendant, Allen Porter, was indicted on two counts as a result of a Government sting operation.

Count One alleged a violation of 18 U.S.C. § 2251(c)(1)(A), the knowing, willful and unlawful publication of a notice to buy or receive visual depictions of minor children engaged in sexually explicit conduct. Count One was dismissed by the Court prior to trial because defendant merely responded to an unsolicited advertisement sent by a Government agent. The undisputed facts indicated that the only "notice" was sent by the Government.

Count Two alleged a violation of 18 U.S.C. § 2252(a)(2), the knowing, willful and unlawful receipt of visual depictions of minor children engaged in sexually explicit conduct. On November 16, 1988, a jury trial commenced with respect to Count Two of the Indictment. On November 23, 1988, the jury returned a guilty verdict.

On December 14, 1988, defendant was provided an opportunity to create a special record regarding the alleged outrageous conduct of the government. Defendant's special record spanned over three days. Six witnesses testified before the Court and twenty exhibits were received for consideration limited to the special record created by defendant.

■ Currently before the Court are three post-trial motions filed by defendant: a motion for acquittal pursuant to Fed.R. Crim.P. 29; a motion for a new trial; and a motion for acquittal based upon the government's outrageous conduct.[1] Each motion is addressed separately.

## I. DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO FED.R. CRIM.P. 29

Defendant submits that an acquittal must be granted because (1) the government failed to prove its case beyond a reasonable doubt, and (2) the jury failed to follow the jury instructions. For the reasons stated below, the Court rejects defendant's arguments.

---

1. Defendant has not filed a written post-trial motion requesting acquittal based on outrageous government conduct. Nonetheless, defendant concluded his special record with a request for acquittal. In addition, defendant has filed an extensive brief in support of his contention that the government's conduct was so outrageous that it violated the defendant's due process rights. Accordingly, the Court is compelled to address the issue of whether the government's conduct was so outrageous that it infringed upon defendant's constitutional rights.

A motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29 must be considered in the light most favorable to the Government. *United States v. Williams,* 503 F.2d 50 (6th Cir.1974). The Supreme Court set forth the standard of review for a motion of acquittal in *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941):

> It is not for [the courts] to weigh the evidence or to determine the credibility of the witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.

If the evidence is such that reasonable minds could differ on the issue of reasonable doubt, then the motion for acquittal must be denied.

### A. *Whether The Government Failed To Meet Its Burden?*

#### 1. *Specific Intent*

■ Defendant submits the Government failed to establish defendant's specific intent to receive child pornography. This contention is patently without merit.

The most significant evidence regarding defendant's intent is the undercover solicitation to which defendant responded. The solicitation stated, in relevant part:

> Hello *Lolita Collector:*
>
> You have been recommended from a reliable contact in which you have done business with. Because you are a trusted and proven customer, we offer you these special selections.
>
> As a serious collector, *you are aware of the worldwide ban and intense enforcement of this type of material. Accordingly, what was legal and commonplace is now an "underground" and secretive service* ... (Emphasis added).

Trial Ex. 1.

The solicitation offered photographs of "boys and girls in sex action" and "[y]oung boys in sex action." The titles of the photograph packages included: Lolita; School Girls and Boys; Nymph Lover; Loving Children; Lesbian Lolita; Life Boy; Lover Boys; Mini Boys; and Chicken. Evidence was presented that the terms "chicken," "Lolita" and "nymph" are known within the pornography industry to indicate child pornography. Defendant responded to the solicitation by ordering the photo set entitled "Nymph Lover." The solicitation provided for "substitute selections" to "avoid delay." Defendant's substitute selections were: "Loving Children," "Lesbian Lolita" and "Lolita." In addition, defendant sent a hand-written note with his order that stated, in relevant part, "I am very interested in any films or video tapes available for this subject matter."

This Court finds the above stated evidence to be sufficient for a reasonable mind to find beyond a reasonable doubt that defendant acted with the specific intent to purchase child pornography through the U.S. mails. Accordingly, defendant's motion must be denied to the extent it addresses defendant's specific intent.

#### 2. *Production of Photographs*

Defendant next argues the Government failed to establish that the production of the photograph received by defendant violated 18 U.S.C. § 2252(a)(2). Specifically, defendant argues that the age of the subject in the photographs was not established, that the evidence did not establish the photographs were produced before 1984 and that the production of the materials received by defendant did not involve the use of a minor.

18 U.S.C. § 2252(a)(2) provides, in relevant part:

> (a) Any person who—
>
> \* \* \* \* \* \*
>
> (2) knowingly receives, or distributes, any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—
>
> (A) the producing of such visual depiction involves the use of a minor engaging in sexual explicit conduct; and

(B) such visual depiction is of such conduct; . . .

shall be punished [by a fine of not more than $10,000 or imprisonment of not more than 10 years, or both].

Minor is defined as any person under the age of eighteen years. 18 U.S.C. § 2256(1).

*(a). The Age of the Photograph Subject*

■ Defendant's first assertion, that the Government failed to establish the age of the photograph subject, is totally groundless. The trial testimony of Dr. Postellon, a pediatrician specializing in child growth and development, indicated that the subject was approximately 10 years of age. Doctor Postellon further testified that he was nearly certain the child was no greater than 13 years of age. Defendant submits that Dr. Postellon's testimony was rendered worthless by the doctor's assumption that the subject was a female and the doctor's admission that the photograph could have been professionally retouched to conceal the subject's true age. The assumptions and admissions of Dr. Postellon do not render his testimony worthless. Rather, they merely create a question of fact to be resolved by the jury. The jury considered defendant's arguments and soundly rejected them in favor of the competent evidence presented by the Government. This Court cannot alter the jury's finding since there is more than substantial evidence to support the conclusion that the subject of the photograph was a minor child.

*(b). Whether the Photographs Must Antedate the 1984 Amendment to 18 U.S.C. § 2256(1)?*

■ Defendant also argues that the Government failed to provide any proof regarding the production date of the photographs. Defendant argues there exists a substantial likelihood that the production of the photographs predate the 1984 amendments to the statute. Prior to the 1984 amendments, the term "minor" was defined as a person under the age of 16 years. Defendant submits that a conviction without proof as to the production date

of the photographs violates defendant's Constitutional right to due process and his right to be free from ex-post facto conviction. Defendant's argument defies logic since it ignores the fact that transportation and receipt of the materials are the gravamen of the offense to which defendant has been convicted. The production date of the photographs is wholly immaterial to the offense. Moreover, assuming the date of production to be material, defendant merely notes a distinction without a difference. The Government witness testified that the photograph subject was a female child no greater than 13 years of age. Although the defendant attacked the credibility of the Government witness, defendant failed to offer any evidence to support the conclusion that the child was sixteen years of age or older. Accordingly, to the extent that the date of production of the photographs is material, the result of this case would be no different.

*(c). Whether the Reproduction of Photographs Must Involve the Use of Minors?*

■ Defendant's final argument regarding the photographs is that the actual physical photographs supplied to defendant by the U.S. Customs Service did not involve the use of minors because they were photographs of pictures contained in a child pornography magazine.

Defendant's argument ignores the fact that the original production of the photographs depicted in the magazine involved the use of minors. The U.S. Customs Service did not produce the photographs but merely reproduced them. If defendant's logic was accepted, persons who receive photographs of child pornography that are reproduced from photograph negatives could not be convicted under the statute since the production involved the use of negatives rather than minor children. Such a result is absurd and clearly not intended by the statute.

*3. Whether the Government Established Predisposition?*

Defendant also argues the Government failed to establish that defendant was pre-

disposed to commit the crime of which he has been found guilty. Of the myriad of arguments offered by defendant, the Court is most troubled by this particular contention.

The defense of entrapment centers upon the intent or predisposition of the defendant to commit the charged offense. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). The degree of Government participation is secondary to the disposition of the defendant to commit the crime. *United States v. Esquer–Gamez*, 550 F.2d 1231, 1233 (9th Cir.1977). Thus, entrapment is not established merely because the Government affords defendant the opportunity to commit the crime. "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed. 2d 366 (1973). The entrapment defense prohibits conviction of a person induced by the Government to commit a crime unless the Government establishes the defendant's predisposition to commit the crime. *Id.*

 Defendant submits that the Government's alleged evidence of predisposition is limited to the fact that defendant's name and address were found on a mailing list maintained by Joseph Surin of Chicago, Illinois.[2] Defendant submits that the appearance of his name on the Surin mailing list does not prove predisposition to commit the crime of which he stands convicted.

Joseph Surin was the operator of Alpine Distributors, an entity that distributed pornographic material through the mail. Mr. Surin was arrested on charges of delivery and receipt of child pornography through the mail. At the time of defendant's trial, the charges against Joseph Surin remained pending.

There is no question that Joseph Surin distributed pornographic materials through

the mail, that at the time of Surin's arrest he possessed material that could be classified as child pornography and that Surin maintained an Alpine Distributor's mailing list that contained the defendant's name and address. Nonetheless, defendant submits that because there was no evidence presented at trial to tie the names on the mailing list to previous purchases of child pornography, the mailing list may not be considered as evidence of predisposition. In substance, defendant submits the Government must produce evidence that defendant had previously received child pornography through the mail before there is evidence of predisposition to commit the instant offense.

The Second Circuit recently addressed a similar issue. *United States v. Gantzer*, 810 F.2d 349, 352 (2nd Cir.1987). In *Gantzer*, defendant raised entrapment as a defense to the crime of sending obscene materials through the mail, in violation of 18 U.S.C. § 1461 (1982). The Government rebutted the entrapment defense by showing the following materials as evidence of predisposition:

(1) letters from Gantzer requesting catalogs of pornographic materials;

(2) letters to Gantzer discussing the availability of pornography; and

(3) a catalog confiscated from Gantzer that advertised pornographic films.

Gantzer challenged the documents' relevance to predisposition. Gantzer argued that since the pornographic materials were not legally obscene there existed no evidence to show predisposition to send obscene materials through the mail.

The Second Circuit disagreed finding that the evidence permitted an inference that Gantzer was predisposed. 810 F.2d at 352. The Second Circuit concluded:

Gantzer's argument rests on an incorrectly rigid interpretation of predisposition. Under Gantzer's theory, the Government could introduce evidence of a previous course of similar conduct only

**2.** The government also argues that video tapes seized from defendant which contained scenes of beastiality are also evidence of defendant's predisposition to purchase child pornography

through the mail. This Court has consistently rejected that theory. The fact that defendant possessed beastiality tapes was excluded from the jury.

if it could prove that the prior conduct included legally punishable criminal acts. This approach would not only burden the Government intolerably by requiring proof of the requisite criminal elements of each act introduced to show predisposition, it would also unfairly prejudice the defendant by diverting the focus of the trial to a series of mini-trials for crimes not charged in the indictment. Such an approach is particularly inappropriate where the charged offense concerns obscenity—an area of law so murky and fraught with difficulty that scholars and courts have struggled for decades to distinguish between permissible pornography and unlawful obscenity. *We hold that Gantzer's propensity to receive pornographic—though not necessarily legally obscene—materials through the mail is probative of his predisposition to send legally obscene photographs.*

*Id.* (Emphasis added).

Although the Sixth Circuit has never addressed the issue of whether mere inferences may rebut a defense of entrapment, the Sixth Circuit has provided five factors relevant to the determination of whether a defendant is predisposed to commit a crime:

(1) the character or reputation of the defendant, including any prior criminal record;

(2) whether the suggestion of the criminal activity was initially made by the government;

(3) whether the defendant was engaged in the criminal activity for profit;

(4) whether the defendant evidenced reluctance to commit the crime but surrendered to repeated government persuasion; and

(5) the nature of the government inducement.

*United States v. Johnson*, 855 F.2d 299, 303 (6th Cir.1988); *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir.1984); *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir.1983). These five factors are elements to be weighed rather than prerequisites that must be satisfied.

Accepting and applying the Second Circuit's position that inferences are relevant to rebut an entrapment defense and considering the five factors offered by the Sixth Circuit, the Court finds that a reasonable mind could conclude beyond reasonable doubt that defendant was predisposed to commit the crime.

The character of the defendant infers evidence of predisposition. Defendant apparently had some prior contact with Joseph Surin, an accused distributor of child pornography. It is a matter of fact that the mailing list upon which defendant's name and address appeared was confiscated in a search incident to the lawful arrest of Joseph Surin. As a result, the Government initiated the sting operation to which defendant willfully responded.

Additional factors are whether the criminal conduct was first suggested by the government and the amount of persuasion applied by the government. Albeit the Government did send a solicitation to the defendant, the Court notes defendant acquiesced to the illegal activity without repeated Government inducement. Defendant was not the least bit reluctant to commit the offense. In fact, the defendant welcomed the opportunity to order child pornography through the mails as evidenced by the hand-written note accompanying his order.

Furthermore, the Court notes the solicitation sent to the defendant intimated illegal conduct. While a more explicit solicitation could have been used, reasonable minds could nonetheless have concluded the solicitation to which defendant responded sought to sell child pornography through the mail.

Finally, the Court notes that defendant did not stand to gain financially from receipt of the photographs. However, the receipt of obscene materials through the mail, as opposed to distribution, rarely involves a financial motive for the receiver, rather, the receiver profits through his personal use of the product. *E.g. Johnson*, 855 F.2d at 304.

The Court hereby DENIES defendant's motion for acquittal based upon insufficient evidence of predisposition. Reasonable minds could have concluded the defendant was predisposed to commit the offense of which he has been convicted.

### B. *Whether The Jury Failed To Follow Their Instructions?*

Defendant's motion for acquittal states in relevant part:

Had the jury accurately followed the Court's instructions, and not been influenced by extraneous considerations improperly injected into the case by the government, the jury must have found [sic] Mr. PORTER not guilty.

Defendant's Motion for Acquittal, para. 3. Nothing in defendant's brief is presented to support this conclusory statement. Nonetheless, the Court has reviewed the jury's charge and reconsidered the government's conduct in prosecuting this case and, as a result, the Court finds defendant's contention to be without merit.

Defendant's motion for acquittal pursuant to Fed.R.Crim.P. 29 is hereby DENIED.

## II. DEFENDANT'S MOTION FOR A NEW TRIAL

Defendant also moves for a new trial pursuant to Fed.R.Crim.P. 33, which provides, in pertinent part:

The Court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.

Rule 33 grants the Court discretion to set aside a verdict that is not substantially justified by the evidence. A motion for a new trial differs from a motion for acquittal in that a new trial may be granted at the Court's discretion if required by justice whereas an acquittal may only be granted when no reasonable mind could find the defendant guilty beyond a reasonable doubt.

Defendant set forth numerous reasons to grant a new trial. Defendant relies upon his argument in support of his motion for acquittal to argue that the verdict is not supported by the evidence. The Court rejects this argument for the reasons previously set forth in this opinion addressing defendant's motion for acquittal.

■ Defendant also argues a new trial is appropriate because the Court omitted a portion of the jury charge requested by defendant. The jury received the following charge on entrapment:

The defendant asserts that he is a victim of entrapment.

When a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, if a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to him to be a favorable opportunity is not entrapment.

If, then, you find beyond a reasonable doubt from the evidence in the case (1) that, before anything at all occurred respecting the alleged offense, the defendant was ready and willing to commit the crime charged whenever opportunity might be afforded him, and (2) that government officers or their agents did no more than offer the opportunity, then you should find that the defendant is not a victim of entrapment.

However, if the evidence leaves you with a reasonable doubt whether the defendant had the previous intent or purpose to commit the offense, apart from the inducement or persuasion of some officer or agent of the Customs Service, then it is your duty to find him not guilty.

In addition to the above cited charge, defendant requested the following:

The burden is on the prosecution to prove beyond a reasonable doubt that the defendant was not entrapped. A valid entrapment defense has two related elements: government inducement of the crime and a lack of predisposition on the

part of the defendant to engage in the criminal conduct.

Defendant submits that the charge given to the jury was incomplete and that the Court erred by refusing to give the additional charge requested by defendant.

The Court disagrees. The additional charge requested by defendant is redundant to the charge given to the jury. This Court's refusal to give the full charge requested by defendant does not amount to error. Accordingly, a new trial due to insufficient jury instructions is not warranted.

■ Defendant further argues that he was denied exculpatory material held by the Government to which he had a right to receive under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, defendant submits the U.S. Customs Service failed to respond to defendant's Subpoena which stated, in relevant part:

> All records in the possession of the Customs Service concerning the investigation of ALPINE DISTRIBUTORS, a former distributor of video cassette tapes, the business reocrds [sic] of which were seized by U.S. Customs in 1985. All records showing the mailing lists of ALPINE DISTRIBUTORS, how the mailing lists were compiled, the sources for the names on the mailing lists. The mailing list on which the name of defendant, ALLEN A. PORTER, is found and all records relating to the business dealings, if any, of ALLEN A. PORTER with ALPINE DISTRIBUTORS.

In response to this Subpoena, the Government produced one page of the Joseph Surin mailing list on which Defendant's name and address appear.

Defendant argues that the items requested "would have demonstrated the absence of any meaningful connection between the defendant and ... Joseph Surin." Brief in Support of Motion for A New Trial, p. 8. Defendant further argues "the records would also have failed to support Agent O'Malley's assertion that he received child pornography from Alpine Distributors." *Id.*

Defendant's specious arguments must be rejected. First, the Government never intimated that it had any evidence to prove a connection between Joseph Surin and defendant other than the fact that defendant's name appeared on Joseph Surin's mailing list. The relevant portion of that list was produced by the Government. The "absence" of any further connection between defendant and Surin is apparent from the fact the Government never represented the existence of any greater connection between the parties and the fact that no additional documentary evidence was produced. Defendant's submission that the Government must produce irrelevant documents before defendant can prove the absence of any greater relationship between Surin and defendant simply defies logic.

Second, defendant's argument that greater production of records would have proven that Joseph Surin/Alpine Distributors never provided Government Agent O'Malley with child pornography is equally unavailing. The Subpoena makes no reference to child pornography confiscated from Joseph Surin by Agent O'Malley. Defendant's statement that the Government withheld exculpatory evidence is unsupported by fact. Indeed, subsequent to trial defendant served a Subpoena upon appropriate Government agents requesting production of the alleged child pornography seized from Joseph Surin/Alpine Distributors. This Subpoena was for the purpose of making the special record on the Government's outrageous conduct. Once properly served, a Government agent appeared in this Court with two tapes, the production of which allegedly involved minor children engaged in sexually explicit conduct. The agent attested to the fact that the tapes were purchased by Agent O'Malley from Joseph Surin/Alpine Distributors.

■ Defendant also submits the Court erred by failing to exclude all testimony concerning Alpine Distributors. The legal basis for defendant's objection is not clear to the Court. Defendant apparently argues that the mailing list is inadmissible

hearsay that precludes all testimony regarding Alpine Distributors. This argument must be rejected for two reasons. First, defendant failed to make a timely objection to admission of the mailing list page. Second, assuming arguendo that the mailing list is inadmissible hearsay, this would not preclude reference of Alpine Distributors in total. To the contrary, defendant's imposition of an entrapment defense makes all evidence concerning Alpine Distributors relevant and admissible for purposes of demonstrating defendant's predisposition.

Defendant also submits the Assistant U.S. Attorney implemented prejudicial argument throughout the trial. The Court finds defendant's arguments to be misstatements of fact unsupported by the trial record. The Court found the prosecution's conduct during the taking of evidence to be acceptable. The Government's closing argument was not unconstitutionally inflammatory.[3] However, any inaccuracy espoused by the Government could and should have been brought to the jury's attention during defendant's closing argument. Similarly, the Court finds no reversible error in the Government's rebuttal argument. Contrary to defendant's representations, the Government never made the slightest of inferences to suggest that the defendant had a burden to prove his innocence.

█ Finally, defense counsel submits that the Court failed to provide him adequate time to prepare for trial. Counsel's submission flies in the face of the representations made by counsel on the first day of trial. Defense counsel unequivocally stated that he was ready to proceed to trial. The Court will not now allow him a second bite of the apple after receiving an unfavorable verdict.

For all of the above stated reasons, the Court hereby DENIES defendant's motion for a new trial.

## III. MOTION FOR ACQUITTAL BASED UPON OUTRAGEOUS GOVERNMENT CONDUCT

Defendant contends that the Government's conduct in investigating and prosecuting this case was so outrageous that it violated the Due Process Clause of the Fifth Amendment.

█ Defendant has filed a brief in support of acquittal that consists of a statement of facts sixteen pages in length. Defendant's statement of facts is irrelevant,[4] fraught with inaccuracies and, for the most part, unsupported by the record.

█ Stripped of irrelevant contentions, it is defendant's position that the Government created and initiated a sting operation that intentionally incorporated a solicitation that would appear to a jury to be a solicitation to purchase child pornography yet, at the same time, appear to a collector of adult pornography to be a solicitation for adult pornography. It is defendant's position that the solicitation used by the U.S. Customs officials impermissibly incorporated a different, less explicit technique than that used by the U.S. Postal Service for purposes of enforcing similar laws. Defendant submits that there was never any child pornography marketed or possessed

---

**3.** It is defense counsel's position that the Assistant United States Attorney improperly injected prejudicial argument in the government's closing argument. Having reviewed the Court's recollection of closing arguments and further reviewing notes kept throughout the trial, the Court finds defense counsel's position to be entirely unfounded. Ironically, the only improper conduct noted during closing argument was action perpetrated by defense counsel, who disrupted the trial by purposefully throwing papers across counsel table and on the floor during the government's closing argument. Defense counsel's conduct bordered on contempt. Similar conduct will not be tolerated by this Court.

**4.** A vast majority of defendant's facts are irrelevant to his claim of outrageous government conduct. The defense of outrageous government conduct is essentially an entrapment defense that cannot be rebutted by proof of defendant's predisposition. Therefore the Court must limit its inquiry to review of the government's conduct in enticing the defendant to commit illegal conduct. Facts relating to conduct subsequent to the commission of the offense are not relevant to the defense of outrageous government conduct since it is impossible for government action subsequent to the offense to have had any enticing influence upon defendant.

by Joseph Surin and that the entire sting operation, insofar as it involved the mailing of solicitations to persons on the Alpine Distributors' mailing list, was unfounded by any reasonable suspicion.

The due process defense of outrageous Government conduct originated in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In *Russell*, the defendant asked the court to reconsider the subjective theory of entrapment wherein the Government can defeat the entrapment defense by showing predisposition on the part of the defendant. Russell argued that the Government inducement and participation in the crime of which he was convicted was so outrageous that the Constitution barred his conviction regardless of his predisposition to commit the crime. Chief Justice Rehnquist (then Justice) rejected the argument as applied to the facts of *Russell*. However, in dicta, Chief Justice Rehnquist left open the question of whether outrageous government conduct alone could bar a criminal prosecution.[5]

The Sixth Circuit has recognized that, in rare instances, the conduct of law enforcement agents may be so outrageous that due process principles would bar government prosecution. *U.S. v. Robinson*, 763 F.2d 778, 785 (6th Cir.1985); *U.S. v. Norton*, 700 F.2d 1072, 1075 (6th Cir.1983), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983). Four factors have been provided by the Sixth Circuit for considering whether the conduct of Government law enforcement officers is so outrageous as to bar prosecution. These four factors are:

(1) the need for the type of Government conduct in relationship to the criminal activity;

(2) the preexistence of a criminal enterprise;

(3) the level of the direction or control of the criminal enterprise by the Government; and

(4) the impact of the Government activity to create the commission of the criminal activity.

*U.S. v. Johnson*, 855 F.2d at 305; *Robinson*, 763 F.2d at 785; *Norton*, 700 F.2d at 1075.

Considering these four factors, the Court concludes the Government conduct did not impinge upon the defendant's constitutional rights.

First, it must be noted that the transmission of child pornography through the mail is an elusive crime. Child pornography can only be obtained from foreign producers or from discrete contacts made between known collectors. The distribution of these materials is conducted via a black-market. There exists limited means available to apprehend perpetrators of this crime. One method is via direct mail solicitation. Defendant submits that the solicitation utilized by the Government is intentionally deceptive. Defendant further submits that the U.S. Customs Agency should have followed the standards utilized by the U.S. Postal Service to apprehend perpetrators of similar laws. This Court disagrees. While it is clear that the Government may have implemented a solicitation that was more explicit about the ages of the children, the Court cannot find that the Government's failure to do so amounts to a violation of defendant's constitutional rights. The evidence presented indicated the solicitation form to which defendant responded was modeled after mail solicitations used by two European distributors of

5. In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), Chief Justice Rehnquist sought to clarify whether outrageous government conduct could result in a violation of a defendant's due process rights even when the defendant is predisposed to commit the crime. Chief Justice Rehnquist stated that the defense of entrapment cannot "be based upon governmental misconduct in a case ... where the predisposition of the defendant to commit the crime [is] established." 425 U.S. at 488–89, 96 S.Ct. at 649–50. The Chief Justice concluded

that the only remedy available to a predisposed defendant is the pursuit of a civil action against the government, not dismissal of the criminal charge. 425 U.S. at 490, 96 S.Ct. at 1650.

Notwithstanding Chief Justice Rehnquist's clear indication that outrageous government conduct should not be a defense to a criminal action, this Court is constrained to review the defense since the Sixth Circuit has recognized that outrageous government conduct can, in some instances, bar prosecution. *E.g. U.S. v. Robinson*, 763 F.2d 778, 785 (6th Cir.1985).

child pornography which solicited mail order sales in the United States.

Second, the Court notes there was evidence of a preexisting criminal enterprise. Regardless of defendant's assertions that child pornography was not marketed or possessed by Joseph Surin, the fact remains that Surin was charged with the distribution and receipt of child pornography through the mail and subsequently, has pled guilty to the charge of receiving child pornography through the mail.[6] A search incident to the lawful arrest of Surin revealed the existence of a mailing list apparently utilized by Surin to distribute pornography through the mail. Having reason to believe Surin was involved in the receipt and distribution of child pornography, the Government had a reasonable suspicion that Surin's mailing list contained the names of individuals interested in obtaining child pornography.

Third, the level of Government control over the enterprise may be construed as minimal. Plaintiff presented no proof that the Government maintained control or directed Alpine Distributors. Moreover, the criminal enterprise ceased to exist subsequent to the arrest of Joseph Surin.

Finally, the Court notes the minimal impact of the Government conduct in creating the commission of the offense by the defendant. The Government involvement was limited to sending a single, one-page solicitation to persons on the Alpine Distributors' mailing list. With the exception of this single solicitation, the Government did nothing to entice criminal activity.

**6.** Defendant has strenuously argued that child pornography was not marketed or possessed by Joseph Surin. Therefore, defendant argues, the government sting operation was unfounded by any reasonable suspicion. To support his claim that Joseph Surin did not possess or market child pornography, defendant showed this Court, during defendant's special record on outrageous government conduct, portions of a tape allegedly purchased by Agent O'Malley from Joseph Surin that purportedly contained child pornography. The tape was accompanied by an affidavit of a physician who holds the opinion that certain of the females depicted on the tape were under the age of eighteen. In addition, an affidavit allegedly executed by a female depicted

ORDER

For the reasons stated in the accompanying Opinion, the Court hereby DENIES defendant's motion for acquittal due to insufficient evidence; motion for new trial; and motion for acquittal due to outrageous government conduct.

IT IS SO ORDERED.

on the tape was presented. The affiant states that she participated in many pornographic movies while under the age of eighteen, including the movie allegedly purchased from Joseph Surin by Agent O'Malley.

This movie, together with accompanying affidavits, is sufficient to establish a reasonable suspicion that Joseph Surin possessed and marketed child pornography. The question of whether Joseph Surin was indeed guilty of distributing child pornography is not before this Court and is irrelevant to these proceedings since, regardless of Joseph Surin's guilt, the government had a reasonable suspicion to proceed with its sting operation.