**UNITED STATES of America, Plaintiff**

v.

**Antwone Maurice SHAW, Amber Lanay Brown, Defendants.**

**Criminal Action No. 3:08 CR–24–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Jan. 25, 2010.

Robert B. Bonar, Thomas W. Dyke, U.S. Attorney Office, Louisville, KY, for Plaintiff.

David S. Mejia, Louisville, KY, for Defendants.

**MEMORANDUM OPINION
AND ORDER**

JOHN G. HEYBURN, II, District Judge.

Defendant Amber Lanay Brown filed a motion to dismiss the superceding indictment returned against her and co-defendant Antwone Maurice Shaw on the grounds of outrageous government conduct. The Court referred the matter to

Magistrate Judge Dave Whalin, who, on November 25, 2009, entered his Findings of Fact and Conclusions of Law and Recommendation. The matter is before the Court on Defendant Brown's objection.

The Court has reviewed the Magistrate's Findings of Fact and Conclusions, which recommend that the Defendant's motion to dismiss be denied. The Magistrate Judge's recommendation and conclusion are thorough and well-supported. Neither Supreme Court nor Sixth Circuit case law envision a dismissal for outrageous circumstances under the circumstances outlined in Defendant Brown's motion. Additionally, even if accepting Brown's version of the facts as true, no constitutional violations are apparent. Thus, the Court cannot find any reason to change either the findings or the conclusions.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Findings of Fact, Conclusions of Law and Recommendation of the Magistrate Judge are ADOPTED in their entirety and Defendant's motion to dismiss is DENIED.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND RECOMMENDATION

DAVE WHALIN, United States Magistrate Judge.

### INTRODUCTION

This matter is before the Court on the motion of Defendant Amber Lanay Brown to dismiss the superseding indictment returned against her and her co-defendant Antwone Maurice Shaw on grounds of outrageous government conduct (DN 61). Brown argues in her motion that the United States, acting at the urging of state prosecutors, has indicted her and her co-defendant in violation of its own policies set forth in § 9–27.260(A) in the U.S. Attorney's Manual, which provides that in determining whether to bring federal crim-

inal charges it is impermissible to consider the effect that the decision to charge may have on the prosecuting attorney's own professional or personal circumstance.

Brown argues that in her case the federal prosecutor only chose to indict her after she attempted to lawfully enforce the terms of a binding oral plea agreement in state court, which would have limited her potential state imprisonment to a maximum term of five years for the same conduct that she now faces a potential mandatory minimum federal sentence of ten years. Only after state prosecutors reneged on their plea agreement and voluntarily dismissed all of the state charges, when it appeared that the state court was ready to enforce the violated plea agreement, did federal prosecutors suddenly decide—after her case had been pending in state court for more than a year—that the case was a federal matter. Even then, they chose not to initially bring charges against her supposedly more culpable co-Defendant, who was only indicted by superceding indictment in federal court after Brown's current counsel protested the injustice of her present situation. For these reasons, Brown maintains that her continued prosecution in federal court violates the due process clause because the Government's conduct is "so outrageous that due process principles would absolutely bar [it] … from invoking judicial process to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *see also, United States v. Johnson,* 855 F.2d 299, 304 (6th Cir.1988).

The United States has filed a brief response (DN 64). In its response, the Government begins with a denial that the present superseding indictment is the result of some joint effort orchestrated with state prosecutors to deny Brown her perceived rights in the enforcement of an

earlier state plea offer. Instead, the Government maintains that the present prosecution is simply an entirely lawful exercise of prosecutorial discretion based on clearly established probable cause to believe that Brown was in possession of 107 grams of crack cocaine found by police in her purse at the time they executed the search warrant in her apartment kitchen. These facts, according to the Government, make the present charges against Brown entirely appropriate, particularly given her subsequent admission to a police officer, in the presence of her own attorney, that the crack cocaine belonged to her, and that she had recently purchased it for $3,250. For these reasons, the Government insists that the present motion is subject to immediate dismissal without the need for an evidentiary hearing.

## FINDINGS OF FACT

The facts that relate to the former state prosecution of Brown and Shaw are not disputed in the government's response. Louisville police on March 8, 2007, executed a search warrant for Brown's apartment. Brown was present for the search during which the aforementioned crack cocaine and a firearm were discovered. Following her arrest, she and Shaw were indicted by a state grand jury seated in Jefferson County, Kentucky. The indictment charged Brown with one count of first degree trafficking in cocaine while in possession of a firearm, a Class B felony which carries a potential sentence of between 10–20 years of imprisonment. The same indictment charged Shaw with one count of first-degree trafficking in cocaine by a subsequent offender while in possession of a firearm, a Class A felony that carries a potential sentence of 20–50 years of imprisonment. Shaw also was charged in the indictment with one count of being a convicted felon in possession of a handgun, a Class C felony with a 5–10 year potential term of imprisonment. The indictment also charged both Defendants with one count of illegally possessing drug paraphernalia, a Class D felony with a potential sentence of 1–5 years of imprisonment.

Brown relates that on September 10, 2007, the prosecutor responsible for her case in the Commonwealth Attorneys' office offered Brown a plea agreement. The agreement provided that in return for her cooperation and truthful testimony against Shaw and her payment of a mandatory $1,000 fine, the Commonwealth would amend the drug trafficking charge to simple first degree trafficking and would recommend a 5–year sentence to run concurrently with a recommended sentence of 12 months on the drug paraphernalia charge. The Commonwealth would further recommend that she be placed on probation on both of these charges subject to her fulfillment of the above-mentioned conditions. According to Brown, the prosecutor promised that the plea offer would remain open until October 29, 2007.

Brown relates that she accepted the plea offer on September 21, 2007, and subsequently "met with authorities on September 27, 2007, truthfully admitted her guilt, truthfully testified regarding her knowledge of the case, and truthfully answered all questions asked of her." Nevertheless, Brown claims that on the following day her attorney, after being again assured that the plea agreement remained in force, suddenly learned that the plea "offer," which she had already accepted, was being withdrawn due to the prosecutor's belief that Brown would not testify truthfully against Shaw at trial.

These events led Brown's state-appointed attorney to file a motion in state court to enforce the plea agreement. The parties came before the state court on October 29, 2007, and were directed to file briefs on the matter. Briefing was completed on November 30, 2007, but before

the state court would rule on the matter, federal authorities successfully obtained an indictment against Brown on March 3, 2008, which led the state prosecutor to move to voluntarily dismiss without prejudice the charges against Brown, and Brown alone, on March 26, 2008. The state court sustained the motion and ruled that the previously pending motion to enforce the plea agreement was moot.

Brown insists that the federal indictment was only returned because the state prosecutor, fearful that he would have to live with the terms of the plea agreement, sought to have the state case dismissed in favor of a federal prosecution, despite the fact that the local federal prosecutor had shown no interest in indicting her during the year that her case had been pending in state court. Later, when federal prosecutors realized that Shaw, the persistent felony offender, remained in the state system, and thereby subject to a potential lesser sentence irrespective of his possible culpability, then and only then, Brown maintains, did federal authorities obtain the superseding federal indictment "in a transparent attempt to cover up their cabal. . . ." (DN 61, p. 4).

### CONCLUSIONS OF LAW

■ Brown bases her motion entirely upon the dicta of *United States v. Russell,* 411 U.S. 423, 430, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), in which Justice Rehnquist, writing for the majority, speculated that on some future occasion the Supreme Court might be presented with a situation "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction. . . ." *Russell,* 411 U.S. at 431, 93 S.Ct. 1637. Justice Rehnquist immediately continued to note, however, that *Russell* was "distinctly not of that breed. . . ." *Id.*

From this dicta, which originated in the context of a claim of entrapment, a substantial body of case law arose, some 200 cases by 1994, wherein defendants have attempted to assert what has become known as a "due process defense" to their criminal prosecution. *See, United States v. Tucker,* 28 F.3d 1420, 1422–28 (6th Cir. 1994), *cert. denied,* 514 U.S. 1049, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995). Such efforts have been almost universally unsuccessful, even in the more traditional context of a possible entrapment situation. *Id.* ("In more than two dozen cases since [*United States v. Leja,* 563 F.2d 244 (6th Cir. 1977)], this circuit has rejected 'on the facts' every attempt to invoke the so-called 'due process' defense.") (collecting cases).

Indeed, a number of circuits, including our own circuit on one occasion, have bluntly held that "there is no binding Supreme Court authority recognizing a defense based solely upon an objective assessment of the Government's conduct in inducing the commission of crimes." *Tucker,* 28 F.3d at 1428. *See also, United States v. Boyd,* 55 F.3d 239, 241 (7th Cir.1995)(holding that the outrageous government conduct doctrine does not exist in the 7th Circuit); *United States v. Santana,* 6 F.3d 1, 3–4 (1st Cir.1993) (The due process defense is the "deathbed child of objective entrapment, a doctrine long since disregarded in the federal courts.").

Justice Rehnquist himself soon stepped away from the dicta of *Russell* in a subsequent decision announced in *Hampton v. United States,* 425 U.S. 484, 489, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), in which he rejected a defendant's due process defense, which was based on *Russell*'s language, observing that "[t]he remedy of the criminal defendant with respect to acts of Government agents lies solely in the defense of entrapment." *Hampton,* 425 U.S. at 490, 96 S.Ct. 1646. While Rehnquist's

view on this matter did not gain a majority, if nothing else, it strongly suggests that the viability of the due process defense, even in the entrapment context in which it originally arose, remains open to serious question. Accordingly, the federal circuits are unable to agree on whether the outrageous conduct defense even exists. *See, United States v. Hachem,* 2007 WL 844770 at *2 (E.D.Mich. Mar. 19, 2007) ("The circuits are split regarding whether an 'outrageous conduct' defense in fact exists under *Russell.*"). Even within the Sixth Circuit, various panels cannot agree on this point. *Id.* ("There is disagreement within the Sixth Circuit as well.") *Cf. United States v. Barger,* 931 F.2d 359 (6th Cir.1991) (setting out factors to determine the existence of outrageous conduct) with *United States v. Tucker,* 28 F.3d 1420 (6th Cir.1994) (No binding Supreme Court or Sixth Circuit authority for the defense exists as it was only recognized in dicta).

Those decisions of the Sixth Circuit which do acknowledge the potential existence of the outrageous conduct defense hold that such defense presents a question of law to be reviewed by the Court. *United States v. Johnson,* 855 F.2d 299, 304–05 (6th Cir.1988); *United States v. Warwick,* 167 F.3d 965, 973–75 (6th Cir.1999), *cert. denied,* 526 U.S. 1151, 119 S.Ct. 2032, 143 L.Ed.2d 1042 (1999) (same). The same decisions explain that to establish such a defense "a defendant must show that 'the Government's involvement in creating his crime (*i.e.,* the means and degrees of inducement) violates the fundamental principles of due process.'" *United States v. Blood,* 435 F.3d 612, 629–30 (6th Cir.2006) (citing *Warwick,* 167 F.3d at 974 (quoting *Russell,* 411 U.S. at 430, 93 S.Ct. 1637)); *Johnson,* 855 F.2d at 304–05; *United States v. Foster,* 835 F.Supp. 360, 364–66 (E.D.Mich.1993) ("Outrageous Government conduct is the exception to the rule that if a defendant is predisposed to crime nothing the Government does can keep it from

prosecuting a defendant. Outrageous Government conduct is a purely legal defense, and it applies only if the Government violated defendant's constitutional rights to such an extent that a court should not allow the Government to prosecute him, regardless of his predisposition to commit a crime.") (citing *Hampton,* 425 U.S. at 495–96 n. 7, 96 S.Ct. 1646).

The Sixth Circuit has established a 4-factor test to determine whether the challenged police conduct impinges on constitutional due process protections. *Johnson,* 855 F.2d at 304–05. These four factors include: "(1) the need for the type of Government conduct in relation to the criminal activity; (2) the preexistence of a criminal enterprise; (3) the level of the direction or control of the criminal enterprise by the Government; [and] (4) the impact of the Government activity to create the commission of the criminal activity." *Id.* (citing *Warwick,* 167 F.3d at 974; *United States v. Porter,* 709 F.Supp. 770, 780 (E.D.Mich.1989)).

Examination of the present facts alleged in Brown's motion, which the Court assumes to be true for the purposes herein, immediately reveals the inapposite nature of Defendant's claim in the present context. Here, we have no underlying claim of entrapment as Brown acknowledges in her motion. The situation therefore is not one in which Government agents played any role in orchestrating the charged offenses. This fact alone distinguishes the present motion from the scenario that gives rise to the claim of outrageous Government conduct in the vast majority of the cases. The inappropriateness of Brown's claim is underscored by the fact that none of the four factors cited above easily can be applied in the present circumstances. In fact, the challenged conduct, the dismissal of the state indictment in favor of the federal indictment of the

Defendants, has nothing whatsoever to do with the preexistence of a criminal enterprise or the direction or control of that enterprise by the Government.

The second problem with applying a due process defense in the present case is that Brown fails to identify any other underlying constitutional right implicated by the decision of the federal authorities to indict her and her co-defendant. At most, Brown repeatedly cites the Court to the policies contained in the guidelines of the U.S. Attorney's Manual. Brown simultaneously acknowledges, however, that such guidelines establish no enforceable rights, much less constitutional ones. *United States v. Myers*, 123 F.3d 350, 355–56(6th Cir.1997)(" '[T]he U.S. Attorney's Manual 'is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.' ")(citing *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir.1995)) (quoting *United States v. Lorenzo*, 995 F.2d 1448, 1453 (9th Cir.1993)). Her prosecution accordingly has not been shown to run afoul of any of her underlying constitutional rights and matters involving the alleged violation of plea agreements are normally analyzed using traditional contract principles. *United States v. Villareal*, 491 F.3d 605, 608–09 (6th Cir.2007)(discussing the obligations of the government to honor a plea agreement that is conditioned on a defendant's substantial assistance).

The next problem from Brown's perspective, relates to the focus of her motion. Her motion is directed at the viability of her federal prosecution. Yet, the alleged misconduct claimed by Brown finds its origin in the conduct of the state prosecutor, whom she claims, and we assume, reneged on an otherwise binding plea agreement after being disappointed with the nature of Brown's testimony at Shaw's parole revocation proceeding. It would seem under

such circumstances that any remedy would not lie with the proceedings in federal court, but rather would be directed to the errant state prosecutor.

This logical conclusion is directly suggested by Justice Rehnquist in the plurality opinion in *Hampton*, wherein he writes that "if the police engage in illegal activity in concert with a defendant beyond the scope of their duties, the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." *Hampton*, 425 U.S. at 490, 96 S.Ct. 1646. Such a suggestion makes imminent good sense in the present circumstances where the United States certainly has the discretion to prosecute given the nature of the incriminating evidence seized from Brown's own apartment. Brown's current position that her federal prosecution is improvident simply finds no basis in constitutional law, and indeed Brown has cited none.

Any possible harm visited upon her lies at worst at the feet of the state prosecutor. While the Court has assumed, for the purposes of this opinion only, that a binding plea agreement existed in state court, this assumption is just that. Additionally, as Brown concedes, the agreement was conditioned in part upon her truthful testimony, a condition that the state prosecutor maintained she violated in giving her revocation hearing testimony. Given these uncertainties, the outcome of any potential action against the state prosecutor remains undeterminable.

Finally, there is the problem of the nature of the remedies sought in relation to the harm that the Court assumes occurred. Brown appears to claim that she was induced by the false promise of a binding plea agreement to incriminate herself in the state court proceedings. Even if that were so, one would logically assume that

the appropriate remedy in such a circumstance would be to suppress from evidence all of the statements Brown made in reliance upon the phantom plea agreement, rather than the dismissal of an otherwise facially valid federal indictment. Indeed, Brown now has pending before the Court for consideration a motion to just that effect—the suppression from evidence in the current federal proceedings of all statements that she made below in reliance on the allegedly phantom plea agreement.

This exact consideration is discussed at length in *United States v. Padilla,* 2007 WL 1079090 at \*2–6 (S.D.Fla. Apr. 9, 2007). *Padilla* involved the widely publicized case of an enemy combatant held in solitary confinement at a naval brig in North Carolina for a number of years, where he allegedly was subjected to total isolation, sensory deprivation and "enhanced interrogation techniques." Following his transfer from military to civil authorities for prosecution in the federal courts, Padilla moved to dismiss the federal indictment based upon the claim that he was subjected to outrageous government conduct while in the custody of the military authorities so as to make his continued federal prosecution a violation of due process.

In a wide-ranging discussion of the due process defense, the District Court for the Southern District of Florida initially explained that " 'Outrageous Government conduct' doctrine is … borne out of cases where the vital issue is the proper scope of Government involvement in the commission of the crime charged." *Id.* at \*2. The court then continued to note that the *dicta* of *Russell,* while frequently discussed in subsequent federal opinions, "has had very little practical effect." *Id. See, United*

*States v. Sanchez,* 138 F.3d 1410, 1413 (11th Cir.1998) (noting that "while the Supreme Court and this Court have recognized the possibility that Government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court.").[1]

*Padilla* then continued to note that the question of outrageous Government conduct has been raised "almost exclusively within the context of Government involvement in the defendant's crime and entrapment." *Padilla,* 2007 WL 1079090 at \*3. The federal courts therefore, according to *Padilla,* have difficulty in ascertaining the precise contours of the doctrine. Nevertheless, the court continued that the failure of Padilla to provide legal support for the application of the due process defense in any other context was not fatal to his motion, although the court did observe that "it bears testament to the claim's severely narrow scope." *Id.* That scope, observed the court, is "predominantly comprised of cases where the doctrine is considered in the context of governmental participation in the crime charged an entrapment." *Id.* (citing in part *United States v. Blood,* 435 F.3d 612 (6th Cir. 2006)).

Primary to the court's analysis in *Padilla* was the distinguishing circumstance that Padilla's challenge essentially rested on alleged misconduct, not of the prosecutors involved in his prosecution in federal court, but upon alleged misconduct by military authorities prior to his transfer to civilian authorities. In such highly unusual circumstances, the court was unable to accept the proposition that the prosecution

---

1. The Court notes that immediately after this quote in *Padilla,* the district court continues to cite our own circuit's decision in *Tucker,* 28 F.3d at 1425 (noting that the *dicta* of *Russell* had been employed by an appellate court to bar only one prosecution, and that the same court subsequently disavowed the holding of that opinion).

in federal court should be undone by misconduct of others not directly involved in such prosecution. In the words of the court in *Padilla,* "Short of resorting to a 'two wrongs make a right' judicial process, it is difficult for this Court to ascertain how the remedy sought emanates from the infirmity defendant describes." *Id.* at *4. The court further noted that even assuming Padilla's due process rights were violated while he was being held in the navy brig as an enemy combatant, he had failed to satisfactorily explain why this violation should result in the dismissal of the distinct crimes that he was not charged with at that point. *Id.* The court observed along these lines that Padilla had failed to explain why suppression of any evidence obtained while he was in the custody of military authorities at the naval brig would not be a sufficient remedy for the alleged due process violation, rather than the dismissal of the pending charges in federal court.

The present Court has considered all of the arguments explored in *Padilla,* and upon its consideration, must agree that they uniformly make good sense in the present case. This case does not involve circumstances wherein the Government created or participated in the underlying charges in any degree. The alleged misconduct, if any, occurred before a separate state jurisdiction. The return of the federal indictments against Brown and Shaw, of itself, violated no federal right of either defendant as far as this Court can determine. Certainly, Brown has not cited any case to the contrary. Finally, if any of Brown's constitutional rights were violated, then the logical solution would not be to dismiss the otherwise valid federal indictment, but rather to suppress the equivalent of the "fruit of the poisonous tree" obtained through the supposed subterfuge of the phantom plea agreement. For these many reasons, the motion of Brown to dismiss the indictment and for an evidentiary hearing on the present motion should be denied.

### RECOMMENDATION

The Magistrate Judge, having considered the written arguments of the parties, hereby recommends to the District Court that the motion of the defendants' to dismiss the superceding indictment on the basis of outrageous government conduct be denied.