45 F.3d 431
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James HARRIS, Willie Volsan, Angela Canoy-Simmons, and
Julandra Young, Defendants-Appellants.
 Nos. 93-1670, 93-1671, 93-1792, 93-1849.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1994.
 
 Before: JONES and BATCHELDER; Circuit Judges; and BECKWITH, District Judge.[1]
 PER CURIAM.
 
 
 1
 Defendants James Harris, Willie Volsan, Angela Canoy-Simmons, previously police officers with the City of Detroit, and Julandra Young, previously a public safety officer with the Highland Park Police Department, all appeal their convictions on charges stemming from a nine-month undercover FBI operation. The district court sentenced defendant Harris to thirty years in custody; defendant Volsan to nineteen years, five months in custody; defendant Canoy-Simmons to three years in custody; and defendant Young to two years, six months in custody. For the reasons that follow, we affirm the convictions and sentences handed down by the district court.
 
 I.
 
 2
 In 1990 the Federal Bureau of Investigation (FBI) became aware that leaks coming out of the Detroit police department had undermined several FBI undercover operations. The FBI specifically suspected defendant Harris and a woman named Cathy Curry. To expose these leaks, the FBI devised a plan whereby several FBI agents would pose as Caribbean drug dealers who needed protection for their money-laundering activities. With the cooperation of a convicted drug dealer then serving time in prison, FBI Agent Castro, posing as one of the Caribbean drug dealers, was introduced to Cathy Curry.
 
 
 3
 At Castro's first meeting with her, Curry claimed to have contacts "downtown." Curry eventually agreed to ask her contacts if they were interested in helping Castro by providing police protection for his illegal activities. As a result, Curry introduced Agent Castro to defendant Volsan who, in turn, supplied Castro with police escorts in at least five instances. On each occasion, Agent Castro and another agent, purporting to carry "drug money" to banks in the Detroit area for laundering purposes, would be accompanied by Detroit police officers. On each occasion, Agent Castro arranged to pay each police officer $3,000. Defendants Harris, Canoy-Simmons, and Young were among the police who acted as escorts for Castro and other undercover FBI agents.
 
 
 4
 From the time of their initial meeting, defendant Volsan made it apparent to Agent Castro that his police contacts could also protect drug shipments into Detroit. Eventually, defendants Volsan and Harris also arranged to provide police escorts for Castro's drug shipments. In exchange for protecting each 100 kg cocaine shipment, the participants would split $50,000 among themselves.
 
 
 5
 Finally, defendant Volsan made arrangements for another police officer, in uniform, to smuggle a machine gun into the Detroit Metropolitan Airport. Agent Castro told Volsan that the gun was to be delivered to his courier, Chico, to shoot someone in another city.
 
 II.
 
 6
 The first issue on appeal, raised by each of the defendants, is the allegation that the conduct of the FBI was extreme and outrageous and in violation of their constitutional rights under the Due Process Clause. It is appropriate to note that the viability of the defense of extreme and outrageous conduct has recently been questioned by this Circuit. In United States v. Tucker, 28 F.3d 1420 (6th Cir.1994), the panel majority pointed out that this Circuit had never held that "the government's conduct ..., if 'outrageous' enough, can bar prosecution of an otherwise predisposed defendant under the Due Process Clause of the Fifth Amendment." Id. at 1424. The panel concluded that it was not required to recognize the "due process" defense of extreme and outrageous conduct, and questioned whether such a defense exists at all. Id. at 1426-27.
 
 
 7
 This Court need not address the issues raised in Tucker at this time because whether or not the defense of extreme and outrageous conduct exists in this Circuit, the government's conduct in this case was neither extreme nor outrageous. Other panels of this Court have been guided by four factors when considering claims of extreme and outrageous conduct: (1) the need for the government conduct; (2) whether the criminal enterprise preexisted the undercover investigation; (3) whether the government agent directed or controlled the enterprise; and (4) the impact of the law enforcement activity on the commission of the crime. United States v. Payne, 962 F.2d 1228, 1231-32 (6th Cir.), cert. denied, 113 S.Ct. 306 (1992), and cert. denied, 113 S.Ct. 811 (1992). We have considered each of these elements in the case of each defendant and we do not find the government's conduct to have been extreme or outrageous in violation of any defendant's constitutional right.[2]
 
 
 8
 The defendants raise numerous additional issues in their appeal. Defendant Volsan alleges that there was insufficient evidence to convict him for causing a machine gun to be smuggled into the airport and that the jury instruction on this charge was improper. Volsan further claims that his Sixth Amendment right to counsel was violated by Agent Castro. Despite Volsan's claims to the contrary, the record includes recorded conversations between Volsan and Agent Castro which make it apparent that Volsan played an integral role in coordinating the delivery of the machine gun to an undercover agent. The record further illustrates that Volsan was well aware of the nature of the weapon to be smuggled past airport security. We therefore reject this defendant's first two assignments of error.
 
 
 9
 Furthermore, Volsan's right to counsel was not violated. At the time the contested conversation took place, Volsan had not yet been taken into custody, arrested, arraigned, or indicted, although a criminal complaint had been filed against him. The filing of a complaint, by itself does not trigger the Sixth Amendment. See United States v. Langley, 848 F.2d 152, 153 (11th Cir.), cert. denied, 488 U.S. 897 (1988); United States v. Pace, 833 F.2d 1307, 1310 (9th Cir.1987), cert. denied, 486 U.S. 1011 (1988); United States v. Smith, 778 F.2d 925, 932 (2d Cir.1985). In addition, Agent Castro's conversation with Volsan was by no means an attempt to interrogate him. Therefore Volsan's constitutional rights were not violated.
 
 
 10
 Defendant Harris alleges that a portion of Agent Castro's testimony was improperly admitted over his hearsay objection. Harris fails to recognize that the testimony which he disputes was neither offered under the co-conspirator exception of Federal Rule of Evidence 801(d)(2)(E), nor offered to prove the truth of the matters discussed by Castro and Cathy Curry. The testimony in question was offered by the government to show that Agent Castro did not intimidate, coerce, or manipulate Cathy Curry. The testimony was not hearsay.
 
 
 11
 Defendants Harris and Young next allege that the cases against them should have been severed from the prosecution of the remaining defendants. Both Harris and Young fail to prove, however, that they warrant severance. The case against the four defendants was intertwined by one ongoing conspiracy. Furthermore, people jointly indicted should ordinarily be tried together. United States v. Warner, 971 F.2d 1189, 1196 (6th Cir.1992). These defendants have not proven that they were substantially prejudiced by the joint trial, or that it created "a serious risk" of compromising any specific trial right of either of them, "or prevent[ed] the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 113 S.Ct. 933, 938 (1993). Consequently, we reject this argument.
 
 
 12
 Defendant Young further alleges that the evidence was insufficient to convict her and that the trial court erred in failing to give limiting instructions to the jury each and every time they were requested. We reject both of these claims. Abundant evidence existed for the jury to convict Young of conspiring and attempting to affect interstate commerce by obtaining property under color of official right. Likewise, we find that the trial court acted within its discretion in giving adequate and appropriate instructions to the jury including an instruction at the end of the presentation of all of the evidence.
 
 
 13
 Finally, defendants Harris and Young allege that the FBI deliberately manipulated the sentencing guidelines by choosing large quantities of cocaine to be protected by the police and by extending the length of the operation. This Court reviews a district court's factual findings in its determination of sentencing under a " 'clearly erroneous' " standard. United States v. Sivils, 960 F.2d 587, 596 (6th Cir.) (quoting United States v. Luster, 889 F.2d 1523, 1525 (6th Cir.1989)), cert. denied, 113 S.Ct. 130 (1992). In the case at hand, the district court found that the FBI devised its operation with proper motives, not intending merely to levy large sentences on the defendants. According to the district court "[t]he scheme just would not play out with a few kilograms at a time. It's unfortunate for the defendants involved, but they acted knowingly and willingly." JA at 1618-19. The district court's finding was not clearly erroneous and we reject the defendants' argument.
 
 III.
 
 14
 For the foregoing reasons, the convictions and sentences of these defendants are AFFIRMED.
 
 
 
 [1]
 The Honorable Sandra S. Beckwith, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [2]
 We recognize that other circuits have held that certain conduct by the government was extreme and outrageous and barred prosecution. United States v. Solorio, 37 F.3d 454 (9th Cir.1994); United States v. Twigg, 588 F.2d 373 (3d Cir.1978). In Solorio, for example, the police paid an informant on a contingency fee basis determined, in part, by whether the people targeted by the undercover operation were convicted. The Ninth Circuit found that offering a monetary incentive to maximize convictions created too great an inducement to falsify evidence and distort the truth. Thus, the government's conduct in Solorio was found to be extreme and outrageous. The case before us is clearly distinguishable from Solorio