**UNITED STATES of America, Plaintiff,**

**v.**

**Jamal ODEESH, Defendant.**

**No. 92–CR–80802.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 6, 1996.

William J. Richards, Assistant United States Attorney, for Plaintiff.

Jonathan M. Epstein, Federal Defender, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR ACQUITTAL

O'MEARA, District Judge.

Before this court is Defendant's *Fed. R.Crim.P.* Rule 29(c), Motion for Judgment of Acquittal as a matter of law on grounds of entrapment. Based upon the following analysis Defendant's motion is **GRANTED** and a **JUDGMENT OF ACQUITTAL** will be entered.

### PROCEDURAL HISTORY

On January 25, 1995 the grand jury indicted the defendant, Jamal Odeesh, of one count of violating 21 U.S.C. § 841(a)(1) by knowingly and intentionally distributing cocaine, a controlled substance. The defendant was arraigned on August 1, 1995 and entered a plea of not guilty. The following day he was released on bond and the Federal Defender Office was appointed to represent him. The defendant's trial began on October 10, 1995. At the close of the government's proofs, on October 11, 1995, the defendant filed a motion for acquittal pursuant to *Fed.R.Crim.P.* Rule 29(a). The motion was taken under advisement. Defendant renewed his motion for acquittal at the close of trial; it was again taken under advisement. The case was submitted to the jury on October 12, 1995. The jury was unable to reach a verdict and the

Court, with both the government and the defendant concurring, declared a mistrial. Defendant now renews his Rule 29(c) Motion for Acquittal as a matter of law.

Whether Mr. Odeesh committed the offense for which he was indicted is not at issue; he admitted the acts constituting the offense both in a signed confession given to a Special Agent of the Federal Bureau of Investigation and as a witness at trial. The defendant urges the court to acquit him arguing that the government's conduct towards him constitutes entrapment as a matter of law.

### FACTS

On July 29, 1991 mutual acquaintances introduced the defendant to Mahmoud Adolaymi, an Arabic-speaking Canadian citizen, purportedly, like the defendant, a native of Iraq. Mr. Adolaymi was employed by the Federal Bureau of Investigation as a confidential informant (hereinafter "government agent" or "agent"), posing as a wealthy Canadian businessman. At their initial meeting the government agent asked if the defendant could obtain cocaine for him.[1] Mr. Odeesh agreed that a sale could be accomplished, but at a later date, and the men discussed the quantity of cocaine Mr. Odeesh would be able to provide. The agent and the defendant maintained contact by telephone and "beeper" as well as meeting a number of additional times. During each encounter the government agent reiterated his request to purchase cocaine and the defendant responded that a deal could be done "tomorrow" or at another time.[2] Finally, on December 19, 1991 the agent, with defendant's help, purchased six ounces of cocaine. The agent paid $4,500; Mr. Odeesh took $200 for his assistance.[3]

The circumstances surrounding this drug deal are undisputed. It is also undisputed that Mr. Odeesh had no record of arrest or

---

**1.** The parties disagree when the agent and the defendant were first introduced and the number of times they met. In reaching its decision the court accepted the facts as presented and argued by the government in its papers and at trial.

**2.** All of the conversations between the agent and the defendant at these meetings were electronically monitored and tape recorded to insure the

agent's safety. The parties did not dispute the accuracy of the recorded conversations offered as evidence at trial.

**3.** According to undisputed testimony at trial, Odeesh obtained the cocaine from his friend "Majid Marcus" who was a participant in the December 19, 1991 transaction.

conviction in drug trafficking prior to his arrest in this matter, and that none of the usual "trappings" of a drug dealer were noted by the FBI agents who arrested him at his home. The parties agree that the defendant has no history of drug, alcohol or even cigarette use; he was however, aware of drug deals and drug dealers in his neighborhood. He has no subsequent drug arrests or convictions. At trial, the government did not offer any evidence to show that, independent of the December 19, 1991 sale, Mr. Odeesh had *any* involvement with the drug trade. The evidence presented at trial is consistent with the defendant's position that Mr. Odeesh reluctantly acquiesced to the agent's requests to purchase cocaine. It is equally clear however, that Mr. Odeesh never unequivocally rejected the agent's expressions of interest in purchasing cocaine.

So what does the evidence tell us? Mr. Odeesh had no criminal record. He had no involvement in use or sale of drugs prior to the transaction in December, 1991, for which he was indicted. He has had none since. He had never smoked, used alcohol or used drugs. He was, at the very least, *slow* to help the government agent obtain cocaine.

### APPLICABLE LAW

The defense of entrapment was first recognized by the United States Supreme Court in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), in which it adopted the "subjective theory," which examines the defendant's predisposition to the criminal activity, and rejected the "objective theory," which examines the government's conduct. *United States v. Tucker*, 28 F.3d 1420, 1422 (6th Cir.1994). Subsequently the Court described entrapment as the "line ... between the trap for the unwary innocent and the trap for the unwary criminal." *Id.* (citing *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820–21, 2 L.Ed.2d 848 (1958)).

As interpreted by the Sixth Circuit Court of Appeals, the law of entrapment "does not prohibit the Government from inducing bad people to commit crimes; it simply strengthens the requirement that the Government prove that its agents did not induce the defendant's criminality." *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir.1993) (citing *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)).

To raise the defense of entrapment, the defendant must produce some evidence that he was not predisposed to commit the crime, but was induced to the criminal act by the government's conduct. Once the defense is raised, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was "disposed to commit the criminal act prior to first being approached by Government agents." *Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).

Predisposition is defined as "the defendant's state of mind before his initial exposure to government agents." *United States v. Hernandez*, 31 F.3d 354, 360 (6th Cir.1994). Factors relevant in determining the defendant's state of mind include:

[1] the character or reputation of the defendant, including any prior criminal record;

[2] whether the suggestion of the criminal activity was initially made by the Government;

[3] whether the defendant was engaged in the criminal activity for profit;

[4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and

[5] the nature of the inducement or persuasion supplied by the Government.

*United States v. Barger*, 931 F.2d 359, 366 (6th Cir.1991).

Entrapment is generally a jury question; however, the court may find the defendant entrapped as a matter of law where the "undisputed evidence," taken in the light most favorable to the government, demonstrates a "patently clear absence of predisposition." *United States v. Tucker*, 28 F.3d 1420, 1428–29 (6th Cir.1994) (citations omitted).

## ANALYSIS

The facts relevant to determining the defendant's state of mind in 1991, and consequently whether he was predisposed to commit the criminal act, are undisputed. The government produced no evidence at trial tending to show that the defendant had a reputation as a drug dealer or user. An unrebutted character witness for Mr. Odeesh described him as "like a priest" because he neither smoked cigarettes or drank alcohol. His lifestyle was not flamboyant; the defendant testified to his financial difficulties in making his rent and his monthly telephone payments; he did not own a car. He had no record of arrests or convictions on charges of drug trafficking or other offenses.

The suggestion of criminal activity was made first by the government's agent, who then pursued Mr. Odeesh with requests for drugs from July until December 1991 when the sale was made.

No evidence suggests Mr. Odeesh had ever made a profit on any criminal activity prior to the December 19, 1991 cocaine sale to the government's agent. On that transaction, Mr. Odeesh made $200.

Despite Mr. Odeesh's failure to reject the agent's requests to help him purchase cocaine, his real-time reluctance or unreadiness is clear and undisputed. Until December 19, 1991 he was never ready to do the "deal" today, always tomorrow or at some later time.

Finally, the nature of the government's inducement was to prey on the defendant's sense of honor; he was unwilling to offend the agent, who he perceived to be rich, powerful and a potential friend, and having repeatedly accepted the agent's hospitality, Mr. Odeesh was ultimately unable to say "no."

The government insists that Mr. Odeesh's acquiescence at their first meeting to the agent's request for cocaine coupled with his profit of $200 once the deal was done indicates the defendant's predisposition to drug trafficking prior to his contact with the government agent. In the government's view, Mr. Odeesh was ready and willing to deal drugs given the opportunity; in the person of Mahmoud Adolaymi the government provided Mr. Odeesh opportunity, not inducement.

■ The court believes the evidence viewed in a light most favorable to the government shows the presence of each of the factors *Barger* holds to be relevant in determining predisposition.[4] It nevertheless spe-

---

4. The government in its reply brief opposing the defendant's Rule 29(c) motion has dealt with each of the five "predisposition" factors. The government's analysis deserves response here.

*Factor One:* "Quoting the character or reputation of the defendant, including any prior criminal record."

While acknowledging that the defendant had no criminal record, the government says that its' agent's testimony that a "Mr. Asoufi" identified defendant Odeesh to the government agent as someone who might sell him cocaine (after the agent had purchased cocaine from Asoufi), is evidence of bad character or reputation. The court disagrees. The court believes Mr. Asoufi's "reference" of the government agent to Mr. Odeesh, without more, carries no negative weight whatsoever concerning Mr. Odeesh's reputation or character.

*Factor Two:* "Whether the suggestion of the criminal activity was initially made by the government."

The government acknowledges that its agent did make the initial suggestion of criminal activity.

*Factor Three:* "Whether the defendant was engaged in the criminal activity for profit."

The government asserts that this factor is satisfied by the fact that Mr. Odeesh kept for himself $200 of the purchase money from the December 19, 1991 drug transaction. The court believes this factor raises the question whether the defendant was more generally engaged in the criminal activity for profit, which defendant Odeesh was not, and is not satisfied by an affirmative answer to the question: Did the defendant profit from the transaction as to which he was charged?

*Factor Four:* "Whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion."

No reasonable finder of fact could conclude anything other than that Mr. Adolaymi, the government agent, would have bought cocaine in July of 1991 or any other time he met with Mr. Odeesh between July and December of 1991 when the lone drug transaction took place. The passage of time between July and December was certainly not the product of Mr. Adolaymi's own reluctance or unavailability; and just as certainly was the product of Mr. Odeesh's reluctance to do the deal, perhaps coupled with his lack of knowledge of cocaine sources and inability to discover these sources, all of which, it seems to the court, is further evidence of entrapment.

cifically rejects the government's argument that "finding entrapment as a matter of law would be proper only where *all* five factors *clearly* weighed against predisposition." (Emphasis the court's.) The court believes that *Barger* should be read to hold that consideration of all five factors together should clearly lead to the conclusion that a defendant was predisposed to commit the crime for the government to avoid the entrapment defense.

Having weighed the evidence in the light most favorable to the government, and considered the factors used in the Sixth Circuit to determine predisposition, the court finds that the undisputed evidence demonstrates a "patently clear absence of predisposition" on the part of the defendant to commit the criminal act of dealing cocaine. In selling cocaine to Mr. Adolaymi the defendant was naive and demonstrated a misguided sense of loyalty to a friend, or potential friend, but his character, reputation, lack of prior criminal involvement and obvious reluctance to comply with the government agent's repeated requests for cocaine support the court's conclusion that Mr. Odeesh was not predisposed to the criminal activity before his initial contact with the government's agent.

If the defense of entrapment is to be meaningful in our jurisprudence, it must be available to a defendant such as Mr. Odeesh.

If a defendant must be more pure, less tainted, than Mr. Odeesh, then almost no defendant could ever avail himself or herself of the defense. After all, the offense charged must *occur* before an accused can say: "Yes, but I was entrapped." The commission of a criminal act by someone in a situation where the use of the defense of entrapment is more compelling is hard to imagine, at least where some other defense such as duress is not present.

Therefore, viewing the evidence in a light most favorable to the government, it is the court's conclusion that Mr. Odeesh was entrapped as a matter of law.

*Factor Five:* "The nature of the inducement or persuasion supplied by the government."

It was undisputed at trial that Mr. Odeesh considered the government agent, Mr. Adolaymi,

## ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's motion for **JUDGMENT OF ACQUITTAL IS GRANTED.**

## *JUDGMENT*

This action came before the Court, Honorable John Corbett O'Meara, District Judge, presiding, and the issues having been considered and a decision having been duly rendered,

It is **ORDERED** and **ADJUDGED** that the defendant's motion for judgment of acquittal is **GRANTED.**

**IT IS FURTHER ORDERED** that .the defendant is acquitted, discharged and any bond exonerated.

a wealthy and influential potential friend who paid for meals, thereby giving rise, in the culture in which Mr. Odeesh was raised, to a sense of obligation by the defendant toward the agent.