NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0334n.06

No. 16-3557

**FILED**
Jun 13, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| LARUN E. MILLER, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: NORRIS, MOORE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Following a bench trial, Larun E. Miller was convicted of various sex crimes. He timely appeals, challenging the district court's refusal to dismiss the indictment, denial of his Rule 29 motion based on insufficient evidence, and denial of his motion to suppress certain statements. For the reasons discussed below, we **AFFIRM**.

## I. BACKGROUND

Miller was required to register as a sex offender, and to re-register within three days of changing residency. On each of his registration dates, July 18, 2013, October 16, 2013, January 14, 2014, and April 14, 2014, Miller provided the same address, a men's shelter in Cleveland. On June 3, 2014, Detective Susan Dechant informed Inspector Brian Fitzgibbon that Miller had not resided at the shelter since September 2013.

During this time frame, an investigation was ongoing in Colorado concerning Miller's online activity. Miller, using the screenname "seekingyounger75," had been chatting online with a person he believed to be a 14-year old girl. In reality, Michael Harris and Cassandra Harris, investigators with the Jefferson County District Attorney's Office, were portraying the teen.[1] During the course of their conversations, Miller asked the minor many personal, sexual questions, specifically asked if she would be interested in performing certain sex acts with him, and discussed what they would do when he visited her in Colorado. The two exchanged hundreds of instant messages, text messages, as well as several emails and phone calls. During the course of their conversations, Miller asked the minor to "take some special pictures just for me" and requested that they videotape their sexual activity and watch it later. He said, "I'll send you a cam but it will cost you doing naughty things." They discussed a potential visit and whether Miller would drive or fly to Colorado; while he initially indicated that he would drive, they also discussed the possibility of him buying a plane or bus ticket.

There was frequent communication between the pair for several days. However, on May 31, 2014, Miller stopped responding to messages. The minor left voicemail messages for Miller at 9:31 a.m. and 10:16 a.m. on the morning of May 31. Miller responded with a text message at 1:59 p.m. The minor then sent text messages at 5:26, 7:05, 7:37, and 9:18 p.m. that day, and received no response. At 1:54 a.m. on June 1, 2014, the minor again texted Miller stating, "Okay. Fuck this, huh? Good-bye." After again receiving no response from Miller, the minor sent the following email:

> I guess you like to play games and were messing with me, huh? Fuck this. I will take care of my lousy fucking life and how people fuck with me and I will leave this worthless world and put my note how you pushed me over the edge. Maybe some fucking show like 20/20 or something will show how fuck heads who play

---

[1] While this opinion refers to Miller's conversations with "the minor," all communications took place with one of the two investigators.

> games who push people over the edge. It's the last game I will play. And game on.
> I'm ending this game and me.

Miller texted Harris at 4:28 a.m.: "Hey sorry stopped in Indiana and fell asleep just bought a charger," and again at 6:02 a.m.: "hey I got your email quit it I'm not like everybody else." Miller then called the minor on June 1 at 6:09 a.m. The parties disagreed about whether the minor's threatening e-mail was sent before or after Miller texted Harris at 4:28 a.m., however the district court determined that the e-mail was sent before, at 4:12 a.m..

Although he had not left Ohio, Miller then told the minor that he was driving and was already in Indiana, "three hundred miles from home." The two continued to communicate by text message until Miller was arrested on June 3, 2014. Miller admitted that he was no longer residing at the address he used on his registration form. He indicated that he wanted to give a statement and was interviewed by Deputy William Boldin and Task Force Officer Don Dondrea after being given his *Miranda* rights.

The opinion of the district court set out the interview statements at issue. At 9:52 a.m., Miller stated that "I gon' prefer not to answer any more questions, then." The officers suggested that he could "see what this stonewalling does" to which Miller replied, "OK. Well, before we go any further can I go use the bathroom?" and indicated that he would "give [] strong consideration" to answering more questions. He was provided a bathroom break at 9:53 a.m., and returned to the interrogation room by 9:58 a.m. where he continued to answer questions. Miller responding to a question at 10:03 a.m. with "no comment" and at 10:04 a.m., stated: "I can only say this. I can't talk anymore, I really can't. I mean, right now I feel like I'm on the edge, I can't comment any further." The interrogation went on until 10:17 a.m., with Miller repeatedly saying he did not want to continue. At the suppression hearing, Miller argued that he

unequivocally invoked his right to silence at 9:52 a.m., but the court determined that Miller invoked it at 10:04 a.m., and suppressed all statements made after that time.

Miller was charged with: 1) using a facility of interstate commerce to entice a minor to engage in illegal sexual activity, and attempting to do so, in violation of 18 U.S.C. § 2422(b); 2) enticing a minor to engage in sexually explicit conduct for purposes of creating a visual depiction of that conduct, and attempting to do so, in violation of 18 U.S.C. § 2251(a) and (e); 3) failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a), (c); and 4) committing a felony sex offense against a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A. (R. 35: Superseding Indictment, PageID 159-61). He entered a plea of not guilty, waived his right to a jury trial, and proceeded to a bench trial. At the close of the Government's case, Miller moved for a judgment of acquittal, which was denied. The district court entered a guilty verdict on all counts and Miller filed a timely appeal.

## II.     ANALYSIS

### A.  Outrageous government conduct

Miller first argues that the trial court erred in denying his motion to dismiss the indictment based on the government agents' outrageous conduct. In examining the denial of a motion to dismiss an indictment for outrageous government conduct, this court reviews the district court's conclusions of law de novo. *United States v. Amawi*, 695 F.3d 457, 483 (6th Cir. 2012).

Miller argues that he had cut off communication with the minor, but by sending an e-mail with a suicide threat, the agents preyed on Miller's emotions, causing him to resume communications that he had ceased. He further argues that any statements he made that could be interpreted to constitute a "substantial step" occurred after he received that e-mail.

Faking a suicide threat to induce someone to resume communications during a sting operation is a concerning tactic for police officers to employ. However, regardless of the propriety of the government action in this case, the Sixth Circuit has not adopted the outrageous government conduct defense. In *United States v. Tucker*, 28 F.3d 1420, 1426–27 (6th Cir. 1994), the court stated that there is no authority in this circuit holding that the "government's conduct in inducing the commission of a crime, if 'outrageous' enough, can bar prosecution of an otherwise predisposed defendant under the Due Process Clause of the Fifth Amendment." *Id.* at 1424. The court "reject[ed] as a matter of law the theory upon which the defendants based their motion to dismiss" without reaching the facts. *Id.* at 1428; *see also United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) ("[W]e have consistently rejected defendants' attempts to argue that the government's conduct in inducing them to commit the crimes charged was so outrageous as to deprive them of their constitutional rights."). We therefore affirm the district court's denial of the motion to dismiss the indictment.

**B.    Sufficiency of the evidence**

Miller argues that there was insufficient evidence to support his convictions under Counts 1 and 2. We review de novo the district court's denial of Miller's motion for judgment of acquittal challenging the sufficiency of the evidence. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). We view the evidence in the light most favorable to the government and then consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Even when a defendant is convicted after a bench trial, the test is 'whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the

defendant was guilty.'" *United States. v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992) (citing

*United States v. Niver*, 689 F.2d 520, 529 (5th Cir. 1982)).

### 1.     Violation of 18 U.S.C. § 2422(b)

The statute at issue, 18 U.S.C. § 2422(b) reads:

Whoever, using the mail or any facility or means of interstate . . . commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The elements of this crime are that:  (1) Miller used interstate commerce in an attempt to

knowingly persuade an individual under the age of 18 to engage in sexual activity; (2) that Miller

believed the person was under 18; and (3) that if sexual activity had occurred, Miller could have

been charged with a criminal offense under state law.  *United States v. Hart*, 635 F.3d 850, 855

(6th Cir. 2011).

In finding Miller guilty on Count 1, the district court made the following findings:

9. The government offered substantial evidence, from texts and instant messages, phone calls, and emails that Miller attempted to induce or encourage Jordan, the fictitious minor, to engage in unlawful sexual activity with him. Specifically, the testimony and evidence of the communications between Miller and Jordan showed Miller attempting to induce and encourage Jordan to engage in oral, vaginal, and anal sex by discussing, in graphic detail, the sexual acts he planned to engage in with the fictitious minor. During these conversations, Miller used sexually explicit language, discussed his genitalia and that of the minor's, inquired of the minor's sexual preferences and sexual history, described, in graphic detail, the sexual activity he planned to perform with the minor, offered to send the minor pictures of his penis, promised he would not hurt her during sex, promised to buy her sexy clothing, and continuously steered the conversations in the direction of sexual contact with the minor.

11. The evidence further demonstrated that even though Jordan was portrayed as experienced and willing to engage in certain types of sex, including oral and vaginal, she feared and did not wish to engage in anal sex. Despite this expressed unwillingness, Miller continued to attempt to induce Jordan to engage in anal sex, ultimately exclaiming in their exchange that "do you know eventually you're going to have to take something in your butt."

(R. 61, at PageID# 589) (citations removed).

Miller argues that he did not persuade, induce, entice, or coerce the minor to "do anything she wasn't already holding herself out as ready, willing and able to do." However, as the district court found, the evidence showed that Miller attempted to persuade, induce, entice, and/or coerce the minor into taking part in certain sexual activities with him in which she had refused to engage. His comments and descriptions are sufficient to sustain his conviction.[2] Therefore, we affirm.

### 2. Violation of 18 U.S.C. § 2251(a) and (e)

Miller next argues that there was insufficient evidence to support his conviction for Count 2 and that Miller did not take a substantial step toward the commission of the offense.

The statute at issue, 18 U.S.C. § 2251(a) reads:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) . . . .

Subsection (e) criminalizes "[a]ny individual who violates, or attempts or conspires to violate" section (a). The Government must show that Miller intended to create child pornography and that he took a substantial step towards creating it. *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013).

---

[2] Miller also argues that admission of recordings of telephone conversations between Cassandra Harris and Miller were hearsay, because Harris was not available for cross examination. He argues that the evidence in those conversations should not have been used to support his convictions. The quoted text from the district court ("do you know eventually you're going to have to take something in your butt") was not part of a phone conversation, but was a text message entered into evidence. (R. 88 at PageID# 167). There is sufficient evidence to sustain Miller's conviction without examining this evidentiary issue.

Relative to the substantial step, the district court found:

6. Miller repeatedly asked Jordan to send him the requested lascivious photographs. On numerous occasions, Miller also instructed Jordan to locate her mother's camera so that the minor could take the photographs of herself to send to him and, ultimately, after the minor appeared unable or unwilling to locate the camera, stepped up his coercive tactics by warning, "There's no ifs, ands or buts do it . . . . Find the fucking camera."

7. Given the fact that Miller was interacting with a fictitious minor who he believed was a 14 year old girl living several states away, Miller clearly did all that he could do—including issuing threats and ultimatums—to encourage the fictitious minor to create and send him these images.

8. The Court finds that these acts constitute substantial steps toward inducing or encouraging a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction, in violation of § 2251(a).

(R. 61 at PageID# 595) (citations removed).

As the district court found, Miller repeatedly asked the minor to take pictures of herself to send to him, offered to send her a camera, instructed her to find the camera that her mother had in the house, and discussed filming their sex acts. Viewed in the light most favorable to the prosecution, there was sufficient evidence supporting Miller's conviction for violation of § 2251.

C.      **Motion to suppress statements**

Finally, Miller argues that the district court should have suppressed statements he made during an interrogation starting at 9:52 a.m., not at 10:04 a.m.  The denial of a motion to suppress is reviewed de novo. *United States v. Harris*, 192 F. 3d 580, 584 (6th Cir. 1999).

When a suspect in custody requests a lawyer, interrogation must cease until a lawyer is provided, unless the suspect "initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 485 (1981).  This is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).  To determine whether a custodial statement is improper, a

court must first determine whether the suspect unambiguously invoked his right to counsel. *Smith v. Illinois*, 469 U.S. 91, 95(1984). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994). "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* (citation omitted). If the statement "fails to meet the requisite level of clarity," officers are not required to stop questioning the suspect. *Id.* "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95.

The district court found that, in the context of the interrogation, Miller's statement that he preferred not to answer any more questions was in line with previous responses he had made when he chose not to answer particular questions while still continuing the interrogation. It also noted that Miller asked if he could go to the restroom "before we go any farther." We agree with the district court's conclusion that the circumstances could have lead a reasonable officer to conclude that the defendant was not unequivocally ending the interview at 9:52 a.m. Thus, we affirm the district court's suppression of statements occurring after 10:04 a.m., as opposed to at an earlier time.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM**.